UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FELIX RUSSELL MARTINEZ, | ) | 1:04-cv-06366-AWI-TAG HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | DENY PETITION FOR WRIT OF HABEAS |
| v. | ) | CORPUS (Doc. 1) |
| | ) | |
| A. K. SCRIBNER, Warden, | ) | ORDER DIRECTING OBJECTIONS TO BE |
| | ) | FILED WITHIN TWENTY DAYS |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections serving a sentence of twenty-five years pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury of attempted murder (Cal. Pen. Code §§ 664, 187), two counts of assault with a semiautomatic firearm (Cal. Pen. Code § 245(b)), assault with a firearm, (Cal. Pen. Code § 245(a)(2)), shooting at an occupied vehicle (Cal. Pen. Code § 246), terrorist threats (Cal. Pen. Code § 422), resisting an officer (Cal. Pen. Code § 69), and discharging a firearm with gross negligence (Cal. Pen. Code § 246.3). (Doc. 6, Exh. 2).  The trial court imposed the mitigated term of five years on the attempted murder charge plus a twenty-year consecutive enhancement pursuant to California Penal Code § 12022.53, for an aggregate sentence of twenty-five years. (Id.). The court stayed the remaining enhancements. (Id.).

The California Court of Appeal for the Fifth Appellate District ("5th DCA") affirmed the conviction in an unpublished opinion filed on October 31, 2002. (Doc. 6, Exh. 4).  Petitioner did not file a petition for review in the California Supreme Court and, thereafter, the 5th DCA issued its remittitur on December 31, 2002. (Doc. 6, Exh. 5).

On August 15, 2003, Petitioner filed a petition for writ of habeas corpus with the Superior Court of California, County of Fresno ("Superior Court"), raising the following claims: (1) insufficient evidence; and (2) ineffective assistance of appellate counsel.  (Doc. 6, Exh. 7).  On August 20, 2003, the Superior Court denied the petition.  (Id.).

On September 17, 2003, Petitioner filed a habeas petition raising identical claims in the 5th DCA; the petition was denied on November 21, 2003. (Doc. 6, Exh. 8).  On December 4, 2003, Petitioner presented the two claims raised herein in a habeas petition filed in the California Supreme Court.  (Doc. 6, Exh. 9).  The California Supreme Court denied the petition on September 15, 2004. (Id.).

The instant petition was filed on October 6, 2004.  (Doc. 1).  Respondent's answer was filed on February 10, 2005.  (Doc. 6).  Petitioner's traverse was filed on February 25, 2005.  (Doc. 9).  Respondent concedes that Petitioner has fully exhausted his two claims in state court.  (Doc. 6, p. 4).

## FACTUAL BACKGROUND

The Court adopts the 5th DCA's Statement of Facts found in the Court's unpublished opinion filed on October 31, 2002, as set forth below.

> On May 24, 2000, Andrew K., appellant's stepfather, drove up to his residence located in a gated community within the City of Fresno.  Mr. K's daughter (who is appellant's half-sister), Heather K., who was seven at the time of trial, accompanied him and was sitting in the passenger's seat of his pickup truck.  As Mr. K. drove up to his residence, he saw appellant standing on the lawn in front of Mr. K.'s residence.  Mr. K. parked his pickup on the street in front of his residence.  Through the open passenger's side window of the truck, appellant asked Mr. K. where his (appellant's) mother was, as she was not at home.  Mr. K. told appellant he did not know where his wife was.  Appellant seemed upset.  Appellant told Mr. K. he wanted his (appellant's) property, which had been stored at Mr. K.'s house.  Mr. K. told appellant he had just returned from taking appellant's property to appellant's uncle's home.  Appellant asked Mr. K. to take him to the uncle's home and then take his property to where appellant wanted it delivered.  Mr. K. replied he could not do that.  Appellant and Mr. K. began arguing about appellant's property.  Appellant grew more upset.  Mr. K. decided to drive away, as he did not want his daughter to witness the argument between himself and appellant.  While appellant and Mr. K. were arguing appellant began to unzip a black bag, which appellant was carrying in his hand.  Mr. K. thought appellant was retrieving his cell phone to call someone to give him a ride, and denied telling police officers he thought

appellant was reaching for a gun. As Mr. K. drove away he heard a loud popping sound. Mr. K. also heard sounds like something striking his truck. Mr. K. believed it was gunfire, and drove around the corner from his residence and called the Fresno Police Department.

As Mr. K. turned the corner he looked out the back window of his truck and saw appellant standing in the street. Mr. K. denied telling the police he had seen appellant running down the street shooting at his truck with a handgun. Mr. K. also denied telling police officers that appellant was in a fit of rage, or that as Mr. K. drove away from the residence he pushed Heather K. down onto the floorboard of the truck. Mr. K. met with police officers approximately 10 minutes after the incident with appellant. Mr. K., concerned about his daughter's perception of the recent events, called his wife, appellant's mother, to come and take his daughter home. Mr. K. returned to his residence approximately two hours after the incident, accompanied by Officer Coleman of the Fresno Police Department. Mr. K. saw that the message light on his digital answering machine was blinking. Mr. K. listened to the messages, and believing two were from appellant, advised Officer Coleman. Appellant's first message concerned getting his property from Mr. K.'s house. In the second message, appellant warned Mr. K. not to return to his home.[1] Officer Judith Stumpf later recorded the messages using a handheld microcassette recorder. The recording made by Officer Stumpf was also introduced into evidence.

Mr. K., upon inspecting his truck after the incident, noticed some "small dents in the metal," one on the front right fender and another near the tailgate. Mr. K. also noted there was a hole in the right rear taillight lens. Mr. K. could not say for certain the marks were not present prior to the incident with appellant. Mr. K. later admitted telling Officer Coleman that he did not remember the damage being present before the incident with appellant. Mr. K. could not recall telling the police he was afraid of appellant. Mr K. did admit that because his wife was the mother of appellant things had been difficult at home since the incident.

Fresno police officers who arrived in response to Mr. K.'s call, secured the area around his residence and believing appellant was still in the area, began a search. The Fresno Police Department's tactical unit, the violent crimes suppression team, participated in the search of the neighborhood looking for appellant. While the search was being conducted the Fresno police officers were notified that appellant had been taken into custody in Sanger, and they discontinued their search for appellant.

Officer Coleman met with and interviewed Mr. K. after the search for appellant was called off. Mr. K. told Officer Coleman that his stepson (appellant) had shot at him and his daughter, and had fired five shots. Mr. K. said that as he drove away from his residence he saw appellant running behind his truck firing at his truck. As he drove away, Mr. K. pushed his daughter down toward the floorboard to protect her from the gunfire. Mr. K. told Officer Coleman that he knew appellant to carry firearms, and became concerned when appellant reached for his black bag during their argument. After Mr. K. showed Officer Coleman where appellant was standing when the incident first began, Officer Coleman located six spent shell casings on the ground. The shell casings were located near the eastern edge of Mr. K.'s residence and throughout the street in an easterly direction. Officer Coleman also located five unexpended, or live, rounds near the location where Mr. K. said appellant was standing when appellant began to pull his gun from the black bag. The five live rounds were on the lawn in front of the residence close to the curb, and were approximately 30 to 40 feet from where Officer Coleman found the first spent shell casing. In addition to the live and expended shell casings, Officer Coleman also located a fired bullet, or projectile, in the

---

[1] A transcript of the message was received into evidence. The message from appellant was: "Don't ever come back to your home again. That was just not even an appetizer. I asked for something simple. I asked for something not too much trouble. Because if it was, you wouldn't have taken my stuff to Valerie's. Call me. Today."

roadway approximately 150 yards from Mr. K.'s residence. Photographs depicting the various locations of the live and expended rounds, and the projectile found by Officer Coleman were introduced into evidence. Mr. K. also pointed out various marks on his pickup truck, which were not present on the truck prior to appellant shooting at the truck. After removing the right rear taillight lens, officers recovered another fired bullet, or projectile, from inside the housing of the taillight. The various live and expended rounds, and the projectiles recovered from the scene, were photographed in their locations by Identification Bureau Technician Patrice Clement, who later collected and inventoried the evidence. The live and expended rounds were for a .25-caliber. Subsequent examinations and testing established that the fired bullets were fired from the .25-caliber semi-automatic handgun appellant had in his possession when he was arrested. The examination of the spent shell casings, found at the scene, established they had been cycled through appellant's weapon.

(Doc. 6, Exh. 4, pp. 5-9).

The 5th DCA described Petitioner's testimony as follows:

Appellant testified that he did shoot at his stepfather's truck, but that it was done at 2:00 a.m. the morning of May 24, 2000, when no one was in the truck. Appellant said he was mad at his stepfather and wanted him to get stopped by the police so he borrowed a car and drove from Sanger to Fresno, parking three houses away from his stepfather's residence. Appellant said after he smoked a cigarette he fired two or three shots at his stepfather's truck. He heard something striking metal and the sound of breaking glass. Appellant then said he picked up the ejected shell casings from his weapon and left the area. Later when he confronted his stepfather in the late afternoon on May 24, 000, appellant admitted he fired his gun. According to appellant he fired five shots into the air. On cross-examination appellant stated his first shot was actually into the ground and aimed in the direction his stepfather's truck was going as he drove away. The other shots he fired into the air.

(Doc. 6, Exh. 4, p. 11).

## DISCUSSION

**I. Jurisdiction.**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to any petition for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997),

overruled on other grounds, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed on October 6, 2004 and is governed by the AEDPA.

**II.  Legal Standard of Review.**

Under the AEDPA, a petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005)(citing Williams v. Taylor, 529 U.S. at 405).  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect; the state court's decision must also be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 511 (2003)(citing Williams v. Taylor, 529 U.S. at 409).  Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005).

///

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodland, 384 F.3d at 637 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F. 3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert. denied, Maddox v. Taylor, 543 U.S. 1038 (2004). The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are presumed to be correct, and the presumption may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's judgment. Robinson v. Ignacio, 360 F. 3d 1044, 1055 (9th Cir. 2004). Where the state court decides the petitioner's claim on the merits, but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas relief is available under 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2000). Where the state court denied the petitioner's claims on procedural grounds or did not decide the claims on the merits, the AEDPA's deferential standard does not apply and the federal court must review the petitioner's claims de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**III.  Review of Petitioner's Claims.**

The instant petition alleges the following grounds for relief:

**Ground One:**     **Insufficient evidence was presented to support Petitioner's conviction.**

**Ground Two:**     **Petitioner's right to the effective assistance of appellate counsel was denied by counsel's performance on appeal.**

**Ground One:**   **Insufficient evidence to support Petitioner's conviction.**

Petitioner contends the evidence presented to the jury was insufficient to support the conviction of attempted murder. Petitioner argues that the evidence was insufficient to establish the intent element of the offense because the requisite intent could not be inferred from the mere aiming and firing of the weapon at the victim. (Doc. 1, p. 5). As discussed below, this contention is without merit.

**A. Standard of Review For Sufficiency of the Evidence.**

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307 (1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319 (italics in original); see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.[2]

It appears to be an open question in the Ninth Circuit whether the AEDPA adds a second level of deference to this standard, so that a federal habeas petitioner may obtain relief only by demonstrating that the state court's adjudication on the merits of the claim involved an unreasonable application of Jackson's "no rational trier of fact" standard. See Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005); Chien v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004)(en banc). However, there is no need to address that issue in the instant case, because the Court reaches the same result whether the record is reviewed directly under Jackson or under the more deferential filter of the AEDPA standard. See id.

///

---

[2] In reviewing sufficiency of evidence claims, California courts expressly follow the standard enunciated in Jackson. See People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992).

This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. See Sumner v. Mata, 455 U.S. 591, 597-598 (1982).

**B.  Sufficient Evidence Was Presented on Attempted Murder.**

1. The Elements of Attempted Murder.

In California, the elements of the crime of attempted murder are "the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." People v. Smith, 37 Cal.4th 733, 734 (2005)(quoting People v. Lee, 31 Cal.4th 613, 623 (2003)).[3]

Hence, in order for a defendant to be convicted of attempted murder of an individual, the prosecution must first prove he acted with specific intent to kill that victim. Id.; People v. Bland, 28 Cal.4th 313, 331 (2002). A defendant manifests an intent to kill by "express malice or by the intentional commission of an act dangerous to life with conscious disregard of that danger (implied malice)." People v. Bland, 28 Cal.4th at 327-328. "One who intentionally attempts to kill another does not often declare his state of mind either before, at, or after the moment he shoots. Absent such direct evidence, the intent obviously must be derived from all the circumstances of the attempt . . . ." People v. Lashley, 1 Cal.App.4th 938, 945-946 (1991); see also People v. Proctor, 4 Cal.4th 499, 531 (1992); Pen.Code, § 21, subd. (a) ("[t]he intent or intention is manifested by the circumstances connected with the offense"). Intent "is a subjective matter rarely susceptible of direct proof. It must be inferred." People v. Corral, 224 Cal.App.2d 300, 304 (1964)(citing People v. Henderson, 138 Cal.App.2d 505, 509 (1956).

Intent to unlawfully kill and express malice are, in essence, "one and the same." Smith, 37 Cal.4th at 734; People v. Saille, 54 Cal.3d 1103, 1114 (1991). To be guilty of attempted murder

---

[3]The jury was instructed with CALJIC No. 8.66 as to these two elements of attempted murder. (CT 218.)

of the victims in this case, Petitioner had to have harbored express malice toward each of them. Smith, 37 Cal.4th at 734; People v. Swain, 12 Cal.4th 593, 604-605 (1996). "Express malice requires a showing that the assailant 'either desire[s] the result [i.e., death] or know[s], to a substantial certainty, that the result will occur.'" Smith, 37 Cal.4th at 734-735 (citing People v. Davenport, 41 Cal.3d 247, 262 (1985) and quoting People v. Velasquez, 26 Cal. 3d 425, 434 (1980)). Where there are multiple victims, whether the defendant acted with specific intent to kill "must be judged separately as to each alleged victim." Bland, 28 Cal.4th at 331.

Lastly, the crime of attempted murder is not divided into degrees. People v. Bright, 12 Cal. 4th 652, 665-669 (1996), overruled on other grounds, People v. Seel, 34 Cal. 4th 535, 550, n. 6. (2004). Although the prosecution may seek a jury finding that an attempted murder was "willful, deliberate, and premeditated" for purposes of imposing a sentence enhancement pursuant to Penal Code § 664, subdivision (a), no such special finding was sought in this case. Accordingly, the prosecution only had to prove that Petitioner purposefully shot at the victims with express malice in order to establish the requisite mental state of mind for conviction of attempted murder. See Smith, 37 Cal.4th at 73.

### 2. Sufficient Evidence Was Presented To Support A Conviction.

In this case, sufficient evidence was presented upon which a reasonable juror could have found that Petitioner harbored "express malice," i.e., that he intended to kill the victim, and also that he engaged in a direct but ineffectual act toward killing the victim. Without repeating all of the facts set forth in the Statement of Facts, supra, the State's evidence can be summarized as follows: after a heated argument with the victim, who had begun to drive away in his truck, Petitioner followed the victim down the street on foot firing five or six rounds at him, several of which hit the truck. At the time, the victim's young daughter was in the car and the victim told her to get down to avoid being hit by gunfire.

These circumstances constitute sufficient evidence to establish intent, i.e., that Petitioner committed acts "dangerous to life with conscious disregard of that danger." Bland, 28 Cal.4th at 327-328. Thus, the evidence was sufficient to support Petitioner's conviction under Jackson. A jury could reasonably have inferred the specific intent to kill from the heated exchange between Petitioner

and the victim and Petitioner's subsequent actions in firing the handgun at the victim's vehicle while occupied by the victim and his daughter.

Petitioner's arguments vis-a-vis sufficiency of the evidence do not contradict the aforementioned evidence of intent, but instead rely upon alternative inferences that could have been, but apparently were not, drawn by the jury that convicted him. Specifically, Petitioner points out that the victim testified that he thought Petitioner was reaching into his black bag to get a cell phone, not a weapon; Petitioner also maintains that the mere taking of a few "pot shots" at the victim's car is not tantamount to an intent to murder. (Doc. 1, pp. 5-6).

These arguments miss the point. The fact that the victim was factually mistaken about what item Petitioner was reaching into his bag to retrieve is entirely irrelevant to the issue of whether Petitioner had the specific intent to kill. It amounts to nothing more than the victim's mistaken opinion regarding an undisputed fact. Moreover, Petitioner's own characterization of his actions as "a few pot shots" trivializes the gravity of his conduct as well as the danger he placed the victim and his daughter in by shooting at them, and belies the obvious risk to the victim's safety that he ignored in firing a weapon directly at him and his daughter. This substantial risk of danger to life lies at the heart of California's case law defining the specific intent to kill. Bland, 28 Cal.4th at 327-328.

In his Traverse, Petitioner relies on People v. Ratliff, 41 Cal. 3d 675 (1986). Petitioner's reliance on this case, however, is misplaced. In Ratliff, a death penalty case, the defendant was convicted of first degree murder and attempted murder in the shooting death and wounding of two gas station attendants. Id. at 684. The evidence established that the defendant demanded money from the two victims before shooting both at close range, killing one and wounding the other. The jury was not instructed that the defendant must have had the specific intent to kill in order to be convicted of attempted murder of the wounded station attendant nor that the implied malice instructions did not apply to the charge of attempted murder. The prosecution conceded the instructional error on appeal, but argued that the error was harmless because the jury must have found that the defendant had the specific intent to kill and would have found so even without the implied malice instruction. Ratliff, 41 Cal. 3d at 695.

///

The California Supreme Court reversed, holding that the evidence clearly showed an "intent to shoot," but not necessarily an intent to kill. Id. at 695. The California Supreme Court held that it would not infer such an intent from the mere fact that the jury found murder-with-special-circumstances as to the deceased victim, because that conviction was based on a felony-murder theory in which specific intent was not an element. Id. The California Supreme Court concluded that under either a "reversible per se" rule or under a harmless error theory, the failure to properly instruct the jury on specific intent to commit murder was reversible error. Id.

Here, of course, unlike Ratliff, the jury *was* properly instructed on the mens rea of specific intent. (CT 214). Moreover, the Ratliff court did not expressly hold that there was insufficient evidence from which a jury could infer the specific intent to kill the wounded victim; instead, it merely indicated that it would not infer such an intent from the jury's finding of special circumstances as to the deceased victim in order to avoid reversing the conviction. As such, the California Supreme Court's comment that there was evidence of an intent to shoot but not necessarily of an intent to kill is dictum.

Here, while the evidence regarding Petitioner's conduct permits conflicting inferences regarding his intent, this Court is not free to pick and choose among the competing inferences that the jury might, but did not, draw. As mentioned above, construing the evidence in the light most favorable to Petitioner is not the appropriate prism for the Court to employ in determining whether sufficient evidence was presented to satisfy constitutional principles. Jackson cautions reviewing courts to consider the evidence "in the light most favorable to the prosecution." Jackson, 443 U.S. at 319. If confronted by a record that supports conflicting inferences, federal habeas courts "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. Id. at 326. Thus, a jury's credibility determinations are entitled to near-total deference under Jackson. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004); see Schlup, 513 U.S. at 330 ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); see also United States v. Brady, 579 F.2d 1121, 1127 (9th Cir. 1978)(explaining that, in applying Jackson test for sufficiency of the evidence, "it is the exclusive function of the jury to determine the credibility of the witnesses, resolve

evidentiary conflicts and draw reasonable inferences from proven facts"); United States v. Ramos, 558 F.2d 545, 546 (9th Cir. 1977) ("[T]he reviewing court must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict.").

Petitioner asks the Court, essentially, to re-weigh the inferences permissible from this evidence in favor of Petitioner rather than the prosecution, in direct contravention of the authority discussed above. This the Court declines to do. Petitioner's attorney had the opportunity to argue the inferences in favor of Petitioner and to point out the defects in the prosecution's case to the jury if he so desired. Moreover, the jury was properly instructed in how to consider and weigh all of the evidence presented, including the charge that in order to convict Petitioner of attempted murder the jury must find he had the specific intent to kill a human being (CT 214, 218), and that if the evidence permitted two reasonable interpretations, one pointing to the existence of that specific intent and the other to its absence, the jury was to adopt the interpretation pointing to its *absence*. (CT 190). Petitioner does not contend that these instructions were either improper or incomplete. Thus, the fact that the jury found Petitioner guilty of attempted murder is a clear indication that the jurors did not find Petitioner's contention that he lacked the specific intent to kill to be a reasonable one.[4]

Based on the foregoing, the Court concludes that the State court's decision rejecting Petitioner's claim of insufficient evidence as to attempted murder was not contrary to nor an unreasonable application of clearly established Federal law. Accordingly, Ground One must be rejected.

**Ground Two:      Petitioner Was Denied The Effective Assistance Of Appellate Counsel Because His Attorney Raised Only A Single Issue On Appeal.**

Petitioner next contends that he was denied the effective assistance of appellate counsel in violation of his rights under the Sixth Amendment. (Doc. 1, p. 6). As proof of appellate counsel's

---

[4]Having concluded that sufficient evidence of a specific intent to kill was presented regarding the immediate circumstances of the crime, without reference to the later threatening phone message, it is unnecessary to address Petitioner's claim that the jury's finding of specific intent was erroneously based on that phone message rather than upon the circumstances existing at the time of the offense.

ineffectiveness, Petitioner points out that appellate counsel failed to raise the issue of sufficiency of the evidence regarding intent to commit murder and chose instead to raise only one claim in the direct appeal, i.e., that California Penal Code § 12022.53(c)(discharging a firearm during the commission of the crime of attempted murder), which imposes a mandatory enhancement of twenty years, constitutes cruel and unusual punishment under the Eighth Amendment, a claim Petitioner characterizes as "ludicrous" given case law to the contrary. (Id.). Petitioner's ground two claim lacks merit.

### A. The Standard For Ineffective Assistance of Counsel.

In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. To establish this, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. The petitioner must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id.; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential, and a court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, petitioner must show prejudice, i.e., whether counsel's errors were so egregious as to deprive him of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688, 694. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; Williams v. Taylor, 529 U.S. at 391. In so doing, the Court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345.

The Court does not need to consider the two elements in any particular order, nor does the Court need to consider both if the showing on either one is insufficient. Strickland, 466 U.S. at 697. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Id. The object of an ineffectiveness claim is not to grade counsel's performance. Id. "If it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In challenges to the effective assistance of appellate counsel, the same standards apply as with the claims of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 5350536 (1986). There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument. See Shah v. United States, 878 F.2d 1156, 1162 (9th Cir.1989); Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir.1994). Moreover, in Smith, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim. Robbins, 528 U.S. at 288. Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal. Id. As a result, there is no requirement that an appellate attorney raise issues that are clearly untenable. Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980).

With these principles in mind, the Court now turns to an analysis of Petitioner's claims of ineffective assistance of counsel.

**B. Petitioner Was Not Denied The Effective Assistance Of Appellate Counsel.**

First, the Court has already considered and rejected as meritless Petitioner's argument that the evidence at trial was insufficient to support a conviction for attempted murder. Therefore, appellate counsel's failure to raise a meritless issue does not amount to ineffectiveness. See Shah, 878 F.2d at 1162; Rodriguez, 17 F.3d at 226.

Second, the fact that counsel chose to raise only a single claim, i.e., that the twenty-year sentence enhancement was cruel and unusual, does not, despite Petitioner's characterization of the claim as "ludicrous," fall below the standard of reasonableness for an appellate attorney. To the contrary, counsel's briefing of the issue reflects a solid understanding of the core issues in the

argument, and the 5th DCA certainly took pains in its opinion to give careful consideration to the argument.  The 5th DCA's opinion acknowledged that appellate counsel had cited the relevant California case law and the Court of Appeal undertook a review of the three-pronged standard announced under those cases before determining that Petitioner's sentence was not unconstitutional.  Under these circumstances, it is specious to contend that appellate counsel's performance was deficient.

Moreover, from a tactical standpoint, counsel's decision to challenge the twenty-year enhancement, which accounted for eighty percent of Petitioner's twenty-five year sentence, was an entirely reasonable decision calculated to result in the greatest possible benefit for Petitioner on appeal.  The conviction for attempted murder was, as mentioned, supported by sufficient evidence, and the five-year sentence resulting from that conviction could hardly be characterized as cruel and unusual.  However, the imposition of an enhancement that was four hundred percent longer than the sentence on the substantive conviction upon which the enhancement was based could cause a reasonable jurist to consider whether such a sentence was permissible under the Eighth Amendment.  Certainly, neither the 5th DCA nor this Court considered such a contention to be legally frivolous.

Finally, even were that not the case, Petitioner cannot establish the second prong of Strickland, i.e., prejudice, from counsel's presentation of an argument that proved unsuccessful.  The mere fact that counsel presented the argument and that the 5th DCA rejected it did not, in itself, prejudice Petitioner's appeal in any way.  Put another way, it cannot be concluded that, had appellate counsel *not* raised that argument on appeal, a better outcome for Petitioner would have been probable.

Accordingly, the State court's determination of this issue was neither contrary to nor an unreasonable application of clearly established Federal law.  Thus, Petitioner's claim of ineffective assistance of appellate counsel should be denied.

## RECOMMENDATIONS

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

///

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 14, 2007**                                              /s/ Theresa A. Goldner
                                                                                          UNITED STATES MAGISTRATE JUDGE